UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PRINCIPAL BANK,

       Plaintiff,

vs.                                    Case No.  2:10-cv-190-FtM-29DNF

FIRST AMERICAN MORTGAGE, INC.,
CONSTRUCTION DISBURSEMENT SERVICES,
INC., FIRST AMERICAN MORTGAGE
SERVICING, INC., FIRST AMERICAN
MORTGAGE FUNDING, LLC, BUILDERS
MORTGAGE COMPANY, LLC and WELLS
FARGO BANK, N.A.,

       Defendants.
_____

**<u>OPINION AND ORDER</u>**

This matter comes before the Court on defendants First American Mortgage, Inc., Construction Disbursement Services, Inc., First American Mortgage Servicing, Inc., and First American Mortgage Funding LLC's (collectively FAM) Motion to Dismiss Third Amended Complaint (Doc. #241) and defendants Builders Mortgage Company, LLC (Builders Mortgage) and Wells Fargo Bank N.A.'s (Wells Fargo) Motion to Dismiss the Third Amended Complaint (Doc. #250). Plaintiff filed Oppositions to both motions. (Docs. ## 284, 285.) On January 4, 2012, the Court entered an Order (Doc. #348) dismissing without prejudice all remaining defendants (K. Hovnanian First Homes, LLC, First Mortgage Lenders of Florida, LLC, First Home Title, LLC, First Home Title, Inc., Ara K. Hovnanian, J. Larry Sorsby, Fred C. Hermann, and Bruce A. Robb).

**I.**

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. Erickson v. Pardus, 551 U.S. 89 (2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002). "To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed." James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1274 (11th Cir. 2008)(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)).  The former rule -- that "[a] complaint should be dismissed only if it appears beyond doubt that the plaintiffs can prove no set of facts which would entitle them to relief," La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004) -- has been retired by Twombly.  James River Ins. Co., 540 F.3d at 1274.  Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).  Alternatively, dismissal is warranted if, assuming the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief.  Neitzke v. Williams, 490 U.S. 319, 326 (1989); Brown v.

<u>Crawford County, Ga.</u>, 960 F.2d 1002, 1009-10 (11th Cir. 1992).  The Court may take judicial notice of matters of public record without converting a Rule 12(b)(6) to a Rule 56 motion.   <u>Halmos v. Bomardier Aerospace Corp.</u>, 404 F. App'x 376 (11th Cir. 2010).

## II.

Taking all the allegations in the Third Amended Complaint as true, this case involves a fraudulent construction lending scheme "orchestrated" by K. Hovnanian First Home, LLC (Hovnanian) and "implemented" by the other defendants.  (Doc. #224, ¶ 1.)  Under the scheme, Hovnanian induced individual borrowers to take out construction loans with the promise that permanent financing would be arranged when their homes were ready for occupancy.  Hovnanian then presented loan packages to the construction lenders with sales contracts promising that Hovnanian would repurchase the houses and pay off the construction loans if permanent financing was not available.  (<u>Id.</u>)  When the houses were complete, permanent financing was not available and Hovnanian did not repurchase the homes, resulting in the failure of at least two credit unions and the bankruptcy of many borrowers.  (<u>Id.</u>, ¶¶ 2-3.)  Plaintiff, Principal Bank (Principal), purchased $20 million in construction loans, most of which are in default and foreclosure.  Bruce Robb (Robb) was the Chief Operating Officer of Hovnanian and its predecessor First Home Builders of Florida, LLC (First Home).  Robb formed First Mortgage Lenders of Florida, LLC (First Mortgage) for

the purpose of becoming a joint venture partner with Wells Fargo Home Mortgage, Inc., which eventually merged with and became a division of Wells Fargo Bank, N.A.  (Id. ¶¶ 10, 12, 14, 15.)

In July 2003, Wells Fargo Ventures, LLC, a shell company of Wells Fargo Bank, N.A. (Wells Fargo), entered into a joint venture with First Mortgage Lenders of Florida, LLC (First Mortgage) and created Builders Mortgage Company, LLC (Builders Mortgage).  (Id., ¶¶ 12, 16-20.)  Wells Fargo committed $10 million in credit to Builders Mortgage and provided all necessary services in exchange for Builders Mortgage advising applicants about Wells Fargo's loans, a management fee, and an annual joint venture fee.  (Id., ¶ 20.)  Builders Mortgage acted as the alter ego of Wells Fargo and First Mortgage.  Wells Fargo exercised financial and operational control over Builders Mortgage, and also shared officers, management, and control with Builders Mortgage.  (Id., ¶¶ 22, 23.)

Hovnanian, First Mortgage and Builders Mortgage, on behalf of the borrower, executed a "Builders Mortgage Company/First Mortgage Lenders of Florida Confirmation of Commitment for Take-Out Financing" (Permanent Loan Certificates) for a permanent loan. Many of these Certificates specified that the borrower was qualified, some indicated that the permanent financing would be provided by Wells Fargo or another lender, and many were false because there was never a commitment by any lender.  (Id., ¶¶ 48, 51, 52.)

First American Mortgage, Inc., Construction Disbursement Services, Inc., First American Mortgage Servicing, Inc. (collectively FAM) are in the business of originating, closing, servicing, and administering home construction loans. (Id., ¶¶ 25, 71.)

Hovnanian, First Mortgage, Builders Mortgage, Wells Fargo, and FAM knew the construction lenders and their participants and investors would rely on the Permanent Loan Certificates as evidence of the existence of a permanent loan commitment, and evidence that the borrower had met Wells Fargo's underwriting standards. They also knew there would be reliance on the repurchase provisions as evidence that Hovnanian was obligated to purchase the properties and payoff construction loans should permanent financing become unavailable. (Id., ¶¶ 54-55.) Following the first closing, packages of each construction loan, including the Permanent Loan Certificates, were sent by Hovnanian and the title agents to FAM, who serviced the construction loans. None of the packages contained the reconveyance deeds, reconveying the property back to Hovnanian, or the purchase agreement amendments, which disclaimed Hovnanian's obligation to repurchase the property and payoff the construction loan. (Id., ¶¶ 58, 59, 68.) As of August 2006, FAM originated nearly 3000 loans, with a commitment amount of nearly $627 million for Hovnanian. (Id., ¶ 80.)

Norlarco Credit Union (Norlarco) is a federally insured credit union, liquidated in 2008, that originated the loans in which Principal eventually purchased participation interests. (Id., ¶¶ 34, 70.)  On August 1, 2003, FAM and Norlarco entered into a Funding and Servicing Agreement (id., Exh. A) whereby FAM agreed to be responsible for arranging permanent financing, and if it did not occur, FAM would purchase the construction loan.  Norlarco made hundreds of construction loans to Hovnanian home buyers and borrowers until its legal lending capacity was exhausted. (Id., ¶¶ 81-82, 83, 85.)

In the Fall of 2005, Principal was approached by Norlarco about purchasing participation interests in the construction loans. While conducting due diligence, Principal met with Norlarco and FAM. (Id., ¶¶ 89, 90, 92-94.)  FAM's general counsel represented and assured Principal that the Construction Loan Agreement, which obligated Hovnanian and made all construction lenders third-party beneficiaries of the agreement, gave Principal the ability as a third party beneficiary to enforce the agreement against Hovnanian and step into the shoes of FAM. (Id., ¶¶ 75-76, 91.)  Principal was further reassured that FAM had a strong relationship with Hovnanian, First Mortgage, and Builders Mortgage who had undertaken to provide permanent financing to the borrowers.  Principal was also reassured that buyers were subject to Wells Fargo's

underwriting standards, and that construction would not start without a firm end-loan commitment. (Id., ¶¶ 92-93.)

Based on documents and representations, Principal was led to believe that Hovnanian, First Mortgage, Builders Mortgage, Wells Fargo, and FAM had subjected each borrower to a credit review for a permanent loan, as evidenced by the Permanent Loan Certificates; that Hovnanian was obligated to purchase properties for which permanent financing was not available; that the borrowers owned the properties conveyed to them with no other unrecorded documents that would create an interest in the properties, like the Reconveyance Deeds; and that as an additional layer of protection, FAM was obligated to purchase the construction loans if the permanent financing did not close. (Id., ¶¶ 95-98.)

The representations were critical since Principal's obligations as a construction lender would cease upon completion of the home and funding of the permanent loan. With the repurchase provision obligation in place, Principal's exposure was mitigated by Hovnanian's obligation to repurchase properties and pay off construction loans where permanent financing was not available and by FAM's obligation to purchase the construction loans if the permanent financing did not close for any reason. As a result, Principal purchased 100 percent participation interest in packages of construction loans to borrowers from Norlarco. (Id., ¶¶ 100, 104, 106.) Effective July 31, 2006, Principal, FAM, and Norlarco

-7-

entered into a Master Loan Participation Agreement (Participation Agreement).  (<u>Id.</u>, ¶ 105.)

Since Principal purchased the loans, 63 of the 82 loans have defaulted and foreclosure actions have commenced.  As of March 2010, Principal was owed approximately $19,876,827, including interest and late charges.  (<u>Id.</u>, ¶ 129; Exh. B.)

Wells Fargo participated in the fraud by issuing commitment letters for permanent financing to the borrowers that expired before construction could be completed or was completed.  Wells Fargo also exercised financial and operational control over Builders Mortgage as its managing member, and the entities acted as each other's actual and apparent agents.  (<u>Id.</u>, ¶¶ 147-150.)

### III.

As it pertains to the remaining defendants, plaintiff alleges negligent misrepresentation (Second Count), fraud (Third Count), a civil conspiracy to defraud (Fifth Count), a violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA)(Sixth Count), a breach of contract and third-party beneficiary breach of contract as to FAM (Eighth and Ninth Count), promissory estoppel as to Wells Fargo and Builders Mortgage (Eleventh Count), breach of contract as to Wells Fargo and Builders Mortgage (Twelfth Count), negligent misrepresentation as to Wells Fargo and Builders Mortgage (Thirteenth Count), and fraud as to Wells Fargo and Builders Mortgage (Fourteenth Count).

The fraud and fraud related counts, including negligent misrepresentation[1], are subject to a heightened pleading standard. Rule 9(b) requires fraud allegations to be plead "with particularity." "In a complaint subject to Rule 9(b)'s particularity requirement, plaintiffs retain the dual burden of providing sufficient particularity as to the fraud while maintaining a sense of brevity and clarity in the drafting of the claim, in accord with Rule 8." Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1278 (11th Cir. 2006). "Particularity means that a plaintiff must plead facts as to time, place and substance of the defendant's alleged fraud, specifically the details of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them." United States ex rel. Atkins v. McInteer, 470 F.3d 1350, 1357 (11th Cir. 2006)(citations and internal quotation marks omitted). See also Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001)(citation omitted); Garfield v. NDC Health Corp., 466 F.3d 1255, 1262 (11th Cir. 2006). "This means the who, what, when [,] where, and how: the first paragraph of any newspaper story." Garfield, 466 F.3d at 1262 (citations omitted). "Failure to satisfy Rule 9(b) is a ground for dismissal of a complaint." Corsello v. Lincare, Inc., 428 F.3d 1008, 1012 (11th Cir. 2005), cert. denied, 127 S. Ct. 42 (2006).

---

[1]Morgan v. W.R. Grace & Co. - Conn., 779 So. 2d 503, 506 (Fla. 2d DCA 2000).

"In a [fraud] case with multiple defendants, the complaint should contain specific allegations with respect to each defendant; generalized allegations 'lumping' multiple defendants together are insufficient." W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc., 287 F. App'x 81, 86 (11th Cir. 2008)(citing Ambrosia Coal & Constr. Co. v. Morales, 482 F.3d 1309, 1317 (11th Cir. 2007) and Brooks v. Blue Cross & Blue Shield, 116 F.3d 1364, 1381 (11th Cir. 1997)). "Therefore, in a case involving multiple defendants . . . the complaint should inform each defendant of the nature of his alleged participation in the fraud." Brooks, 116 F.3d at 1381 (internal quotations omitted); see also Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'").

**IV.**

**Count II & Count XIII - Negligent Misrepresentation**

To state a claim for negligent misrepresentation, plaintiff must allege: (1) a misrepresentation of material fact; (2) that defendant knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) that defendant intended to induce another to act on the misrepresentation; and (4) that an injury resulted in justifiable reliance upon the misrepresentation.

<u>Atlantic Nat'l Bank of Fla. v. Vest</u>, 480 So. 2d 1328, 1331-32 (Fla. 2d DCA 1985)(citations omitted).

In Count II, plaintiff alleges that Builders Mortgage, Wells Fargo, and FAM, along with others, failed to exercise due care in making material representations and/or omitting material information concerning the loans, including: (1) that commitments for permanent loans were issued subject only to conditions set forth in the Permanent Loan Certificates; (2) some borrowers were told by Hovnanian and its agents that they would never need to close on their homes or pay the loans; (3) that borrowers' homes appraised values were inflated; (4) repeated confirmations that permanent financing had been obtained for the borrowers; (5) representations that Hovnanian was obligated to repurchase the properties; and (6) that the borrowers owned the properties pursuant to statutory warranty deeds.  Plaintiff alleges that defendants knew or should have known that the representations were false at the time they were made or that material information was omitted, that they would be relied on by one or more lenders, participants or investors, and that there was an intent to induce lenders, participants or investors to purchase and fund the loans. Plaintiff further alleges that it relied upon the misrepresentations and omissions causing actual damages.  (Doc. #224, ¶¶ 163-166, 167, 170.)

Upon review of the allegations in Count II, even coupled with the underlying factual allegations, the Court finds that negligent misrepresentation is not adequately pled with specificity. Although several misrepresentations or omissions are provided, it is unclear which defendant made the misrepresentation or omission. The motions to dismiss will be granted, without prejudice to amend.

In Count XIII, as to Builders Mortgage and Wells Fargo only, plaintiff alleges that it is the owner of the loans, is identified as a construction lender by FAM, and is an intended third party beneficiary of the same rights and remedies as FAM holds under the Construction Loan Agreement as the purchaser of construction loans from Norlarco and as a construction lender.  To induce Norlarco and construction lenders to provide loans, plaintiff alleges that Bruce Robb, on behalf of Builders Mortgage and other entities, told FAM that loan commitments from permanent lenders would be provided to pay off construction loans.  FAM representatives discussed with representatives of Builders Mortgage that construction lenders would not agree to provide construction loans to borrowers because commitments contained multiple and differing conditions and expiration dates before the maturity of the construction loans.  As a result, Bruce Robb, on behalf of Builders Mortgage represented to FAM and Norlarco that Builders Mortgage would commit to provide take-out financing regardless of the borrower's original permanent loan commitment from any other source.  In reliance, FAM and

Norlarco agreed with Builders to a one page form to satisfy permanent loan commitment requirements, the Permanent Loan Certificate. Builders Mortgage had an economic interest in the construction loan transactions. The representations were intended to influence construction lenders, including plaintiff, to make construction loans. Builders Mortgage provided the one page Permanent Loan Certificates to FAM with the submission of each borrower to lenders for approval with the intent that the lenders would rely on the commitment. Borrowers were not aware of the Certificates. Builders Mortgage signed and executed most of the Certificates to help FAM and Norlarco "off-load" loans to plaintiff and other third-parties. The commitment by Builders Mortgage was done orally and in writing to plaintiff and as a direct and proximate result of plaintiff's reasonable reliance, damages were suffered. (Doc. #224, ¶¶ 258-273.)

Although plaintiff alleges earlier in the Third Amended Complaint that an agency relationship exists between Builders Mortgage and Wells Fargo, the allegations do not support a claim against Wells Fargo, which is not mentioned in Count XIII. Therefore, the motion to dismiss will be granted as to Wells Fargo. Count XIII is otherwise adequately pled as to Builders Mortgage.

**Count III & Count XIV - Fraud**

For a common law claim of fraud, plaintiff must allege: "(1) a false statement of fact; (2) known by the person making the

statement to be false at the time it was made; (3) made for the purpose of inducing another to act in reliance thereon; (4) action by the other person in reliance on the correctness of the statement; and (5) resulting damage to the other person." Gandy v. Trans World Computer Tech. Grp., 787 So. 2d 116, 118 (Fla. 2d DCA 2001)(citation omitted).

In Count III, plaintiff alleges that Builders Mortgage and Wells Fargo knowingly and intentionally made material misrepresentations and omitted material information concerning the loans as previously listed as to Count II. (Doc. #224, ¶¶ 172-175, 178.)

In Count XIV, as to Wells Fargo and Builders Mortgage only, plaintiff alleges that it is now the owner of the loans, has been identified by FAM as a construction lender, and is an intended third-party beneficiary to FAM's rights and remedies as a construction lender and purchaser of loans from Norlarco. To induce construction lenders like plaintiff to provide construction loans, Builders Mortgage told FAM that they would provide take-out loan commitments from permanent lenders to pay-off the construction loans. The allegations are essentially the same as stated in Count XIII. (Doc. #224, ¶¶ 276-289.)

Counts III and XIV both suffer from the same deficiencies as stated above for Counts II and XIII. Therefore, the motion to dismiss will be granted as to Count III and granted in part and

denied in part as to Count XIII.  The motion is granted as to Wells Fargo and denied as to Builders Mortgage.  The motions are granted with leave to amend.

**Count V - Civil Conspiracy to Defraud**

To state a claim for civil conspiracy, there must be an underlying tort or wrong, or a "peculiar power of coercion" possessed by the conspirators.  <u>Walters v. Blankenship</u>, 931 So. 2d 137, 140 (Fla. 5th DCA 2006)(citations omitted).  The demonstrate a conspiracy, plaintiff must show a conspiracy between two or more parties to do an unlawful act or to do a lawful act by unlawful means, an overt act in furtherance of the conspiracy, and resulting damages.  <u>Id.</u>

Plaintiff alleges that all defendants conspired to induce lenders, participants or investors to purchase and fund the loans, and committed "many acts in furtherance."  Plaintiff also alleges that defendants did so in concert and with a "peculiar power of coercion" with Hovnanian causing damages.  (Doc. #224, ¶¶ 187-190.)

The Court finds that simply alleging "many acts" is insufficient to provide defendants notice of their individual contribution to the conspiracy.  The Court further finds that the power of coercion is not adequately pled.  When relying upon this as the underlying tort, there must be a "malicious motive and coercion through numbers or economic influence."  <u>Churruca v. Miami Jai-Alai, Inc.</u>, 353 So. 2d 547, 550 (Fla. 1977).  This has not been

alleged.  Therefore, the motions to dismiss will be granted without prejudice to amend.

**Count VI - FDUTPA**

The Florida Deceptive and Unfair Trade Practices Act (FDUTPA) provides a civil cause of action for "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204(1), Fla. Stat. (2005). "A consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." City First Mortg. Corp. v. Barton, 988 So. 2d 82, 86 (Fla. 4th DCA 2008)(internal citations and quotation omitted). See also KC Leisure, Inc. v. Haber, 972 S. 2d 1069, 1073-74 (Fla. 5th DCA 2008).

Plaintiff alleges that "Defendants" engaged in unconscionable, unfair and deceptive acts using unfair practices, and through their statements and participation were direct participants as set forth in Count Six.  As a result, plaintiff suffered damages.  (Doc. #224, ¶¶ 192-194.)  The motions to dismiss will be granted. Plaintiff does not identify any deceptive acts or unfair practices, does not identify any particular defendant associated with a deceptive act or unfair practice, and improperly attempts to incorporate Count VI into the allegations.  Plaintiff is granted leave to amend, to the extent it can allege a count under FDUTPA.

**Counts VIII, IX, and XII - Breach of Contract**

For a breach of contract claim, plaintiff must show that a contract existed, that the contract was breached, and that non-speculative damages flowed from the breach. A.R. Holland, Inc. v. Wendco Corp., 884 So. 2d 1006, 1008 (Fla. 1st DCA 2004). "A party has a cause of action as a third-party beneficiary to a contract if the contracting parties express an intent primarily and directly to benefit that third party (or a class of persons to which that third party belongs)." Vencor Hosps. v. Blue Cross Blue Shield of R.I., 169 F.3d 677, 680 (11th Cir. 1999)(citing Daniel v. Florida Residential Prop. & Cas. Joint Underwriting Ass'n, 718 So. 2d 936, 937 (Fla. 3d DCA 1998)).

In Count VIII, as to FAM only, plaintiff alleges that FAM and plaintiff are parties to the Participation Agreement wherein certain representations and warranties were made by FAM, including that the loans complied with laws and non-predatory or non-deceptive lending practices, and were in compliance with customary mortgage practices of prudent mortgage lending institutions. FAM also expressed no knowledge of any fraud, omission, misrepresentation, or negligence by any person involved in the origination of the loans, and explicitly represented and warranted that the documents, instruments, and agreement were not false or misleading. Plaintiff alleges that FAM knew or should have known otherwise, and that damages resulted as a result. (Doc. #224, ¶¶

-17-

202-207.)   Plaintiff does not allege that there was a valid contract, that FAM breached the agreement, or that the damages suffered stem from the breach of the terms in the Participation Agreement specifically.   The Court finds that Count VIII does not state a claim for breach of contract against FAM.

In Count IX, plaintiff alleges a third-party beneficiary breach of contract as to FAM only.   Plaintiff alleges that it is and was entitled to the benefits of the Funding and Servicing Agreement between FAM and Norlarco.   The obligations under this Agreement primarily and directly benefit plaintiff as the owner of a 100% participation interest in the construction loans, and the clear intent of the benefit is expressed and reflected in the Participation Agreement between FAM, Norlarco, and plaintiff. Plaintiff alleges that FAM failed to satisfy its obligations under the Funding and Servicing Agreement by not purchasing any of the construction loans when the borrowers were unable to obtain permanent financing or unable to close thereby failing to satisfy its obligations under the Funding and Servicing Agreement. Plaintiff suffered damages as a result.   (Doc. #224, ¶¶ 210-214.) The Court finds that plaintiff has adequately pled a third-party breach of contract as to FAM.   At this stage of the proceedings, plaintiff must simply allege an intent to benefit it as the third-party, not prove that it is in fact a third-party beneficiary.   The motion to dismiss will be denied as to Count IX.

-18-

In Count XII, as to Wells Fargo and Builders Mortgage, plaintiff alleges that it is a construction lender under the Construction Loan Agreement, as set forth in the Participation Agreement, and it is an intended third-party beneficiary of the Construction Loan Agreement entitled to the rights and benefits of FAM. As the intended third-party beneficiary and purchaser of loans from Norlarco, plaintiff alleges it is entitled to the benefits of the Construction Loan Agreement between Hovnanian and FAM. To induce Norlarco and other construction lenders, Bruce Robb on behalf of Builders Mortgage made statements to FAM and others that FAM and Norlarco relied upon regarding permanent loan commitments to pay off construction loans. Bruce Robb, on behalf of Builders Mortgage represented to FAM and Norlarco that Builders Mortgage would provide take-out financing. In reliance, FAM and Norlarco agreed to a form Permanent Loan Certificate without the borrowers' knowledge. When the time came for Builders Mortgage to provide the take-out financing and pay of construction loans, Builders Mortgage did not do so and breached its obligation to provide take-out financing. Plaintiff suffered damages as a result of the breach. (Doc. #224, ¶¶ 242-244, 246-248, 253-255.)

Count XII contains no allegations as to Wells Fargo. Therefore the motion to dismiss will be granted as to Wells Fargo. The motion to dismiss is denied with regard to Builders Mortgage.

-19-

**Count XI - Promissory Estoppel**

To state a claim for promissory estoppel, plaintiff must show: (1) a promise, (2) that should reasonably be expected to induce action or forbearance, (3) which does induce such action or forbearance, and (4) injustice can be avoided only by enforcement of the promise. W.R. Grace & Co. v. Geodata Servs., Inc., 547 So. 2d 919, 924 (Fla. 1989)(quoting Restatement (Second) of Contracts § 90 (1979)).

In Count XI, plaintiff alleges, as to Wells Fargo and Builders Mortgage, that it is an intended third-party beneficiary under the Construction Loan Agreement because it is identified as a construction lender under the Construction Loan Agreement as set forth in the Participation Agreement. As a owner of 100 percent of the participation interest, plaintiff states that it is entitled to the benefits of the Construction Loan Agreement between Hovnanian and FAM, and Hovnanian's performance. To induce Noralarco and other construction lenders, Bruce Robb on behalf of Builders Mortgage told FAM that take-out loan commitments would be provided. FAM representatives had discussions with representatives of Builders Mortgage and certain representations were made. (Doc. #224, ¶¶ 226-232.)

The allegations are fairly similar to those alleged in Count XIII, and also lack any mention or allegation directed at Wells Fargo. Therefore, the motion to dismiss will be granted as to

Wells Fargo.   The motion will also be granted as to Builders Mortgage.   Although plaintiff states that it reasonably relied to its detriment on promises of Builders Mortgage, <u>id.</u> at ¶ 238, it is not clear that any promises were made directly to plaintiff, as opposed to Norlarco.

**V.**

The parties seek a dismissal with prejudice as the current operative pleading is the Third Amended Complaint.   The request will be denied.   A review of the docket reflects that plaintiff filed an Amended Complaint (Doc. #116) with leave of Court and without a response indicating opposition to the request.   (<u>See</u> Doc. #113.)   The Second Amended Complaint (Doc. #118) was filed several weeks later after the Court granted an unopposed request to file a revised complaint.   (Doc. #117.)   The current operative pleading was filed to add counts after receiving discovery, and with leave of court after review of a Response (Doc. #211) in opposition.   As this is the first time the Court has reviewed plaintiff's pleading, on the merits of the allegations, a dismissal with prejudice would not be appropriate.

Accordingly, it is now

**ORDERED:**

1.   Defendants First American Mortgage, Inc., Construction Disbursement Services, Inc., First American Mortgage Servicing, Inc., and First American Mortgage Funding LLC's (collectively FAM)

Motion to Dismiss Third Amended Complaint (Doc. #241) is **GRANTED IN PART AND DENIED IN PART** as detailed above and the Third Amended Complaint is dismissed without prejudice.

    2.  Defendants Builders Mortgage Company, LLC and Wells Fargo Bank N.A.'s (collectively Builders & Wells) Motion to Dismiss the Third Amended Complaint (Doc. #250) is **GRANTED IN PART AND DENIED IN PART** as detailed above and the Third Amended Complaint is dismissed without prejudice.

    3.  Plaintiff may file a Fourth Amended Complaint within **FOURTEEN (14) DAYS** of this Opinion and Order.

    **DONE AND ORDERED** at Fort Myers, Florida, this __14th__ day of February, 2012.

_John E. Steele_
JOHN E. STEELE
United States District Judge

Copies:
Counsel of record